```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TOUCHLINE VIDEO, INC.,         )
                               )
          Plaintiff,           )
                               )
     v.                        )    1:21-CV-858
                               )
THE INTERCOLLEGIATE WOMEN'S    )
LACROSSE COACHES ASSOCIATION,  )
                               )
          Defendant.           )
```

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This case is before the court on the motion of Defendant The Intercollegiate Women's Lacrosse Coaches Association ("IWLCA") to dismiss the claims of Plaintiff Touchline Video ("Touchline") for breach of contract and unjust enrichment. (Doc. 14.) The motion is fully briefed. (Docs. 16, 18.) For the reasons set forth below, IWLCA's motion to dismiss will be denied.

I. **BACKGROUND**

The basic facts alleged by Touchline, taken as true for the purpose of this motion, are as follows:

Touchline is a Nevada corporation with its principal place of business in Tennessee. (Doc. 1 at ¶ 1.) It is the nation's "largest video production company specializing in youth sports," and records thousands of matches from youth sporting events each year. (Id. at ¶ 9.) IWLCA is a Maryland corporation and is a professional association comprised of women's lacrosse coaches

within the National Collegiate Athletic Association and the National Association of Intercollegiate Athletes. (Id. at ¶ 18.) Each year, IWLCA hosts a series of recruiting tournaments for high school lacrosse teams. (Doc. 1-1 at 2.)

Beginning in 2012, IWLCA and Touchline entered into an agreement for Touchline to provide certain video recording services for IWLCA's tournaments. (Doc. 1 at ¶ 10.) In 2018, the parties extended the original agreement with mutually agreed upon modifications for an additional five years (the "2018 Agreement"). (Id. at ¶ 12.) Specifically, Touchline agreed, among other things, to "provide high quality video recordings of every game played in each of the Tournaments," work in a timely and professional manner "with the online hosting company contracted by IWLCA," offer some recordings at a discounted rate to each team participating in one of IWLCA's tournaments and who also registered for the "video choice option," make the tournaments a "priority commitment," offer preferred discount rates for IWLCA's tournaments for all of Touchline's video packages, and provide a "Highlights Package" to tournament participants at a rate in Touchline's discretion. (Id. at ¶¶ 24a-24e.)

In exchange for those promises, IWLCA agreed, among other things, to pay Touchline $100 per registered team for Touchline's recording services when IWLCA sold its own packages, pay Touchline $100 for each team that selected the "video choice option," and

2

communicate with Touchline in a timely manner.  (Id. at ¶¶ 25a-25c.)

In early 2020, IWLCA's leadership changed, and tensions between IWLCA and Touchline began to grow.  (Id. at ¶ 13.)  IWLCA's new leadership began complaining about the terms of the 2018 Agreement and informed Touchline that it was exploring a business relationship with a recruiting platform company, which would host IWLCA's tournament videos.  (Id. at ¶ 14.)  IWLCA also "proposed one-sided, unreasonable terms inconsistent with the Parties' negotiated business agreement."  (Id.)  Chief among those complaints was IWLCA's allegation that a change in market rates for video production resulted in Touchline benefitting from an unfair deal.  (Id. at ¶ 36.)  IWLCA also complained that it was not receiving a commission on Touchline's video sales, which IWLCA argued had become industry standard.  (Id. at ¶ 39.)

IWLCA also introduced a third-party recruiting company, SportsRecruits, into the parties' relationship.  (Id. at ¶ 42.)  SportsRecruits is a recruiting platform and has its own video subsidiary, Cross Street Sports.  (Id. at ¶ 43.)  IWLCA ultimately asked Touchline to coordinate with SportsRecruits to provide videos for the 2021 IWLCA tournaments.  (Id. at ¶ 42.)  Touchline agreed to operate with SportsRecruits pursuant to the 2018 Agreement but "did not expect or agree that this would be a permanent modification to the 2018 Contract."  (Id. at ¶ 44.)

3

In November 2020, IWLCA again contacted Touchline to "confirm a few of the rights" under the 2018 Agreement. (Id. at ¶ 45.) IWLCA asserted that, when Touchline sold a "video select option" recording package to a tournament team, Touchline would receive $100 and pay IWLCA $200. (Id. at ¶ 46a.) IWLCA also demanded that if Touchline were to host tournament videos on another site, it must restrict access to those videos to IWLCA coaches. (Id. at ¶ 46b.) Finally, IWLCA informed Touchline it did not have a license to provide IWLCA "[t]ournament film to any platform or company for any additional access beyond IWLCA coaches or for cost without the IWLCA written permission." (Id. at ¶ 46c.) This restriction on where Touchline could post IWLCA film came after years of Touchline displaying videos on another video hosting platform, ConnectLAX, with no objection from IWLCA. (Id. at ¶ 48.)

In December 2020, Touchline responded, noting IWLCA's concerns and that its goal was to continue their business relationship. (Id. at ¶ 50.) Touchline also agreed to renegotiate the 2018 Agreement to ensure that the parties would have a "positive working relationship into the future." (Id. at ¶ 51.) In pursuit of that renegotiation, Touchline provided IWLCA with a new agreement on December 9, 2020. (Id. at ¶ 52.) That proposed agreement provided that Touchline would grant IWLCA access to tournament video recordings and provide a substantial discount to the players and teams, while maintaining Touchline's ability to

4

profit from its work.  (Id.)  IWLCA rejected the proposed agreement.  (Id. at ¶ 53.)  IWLCA proposed its own "addendum" to the 2018 Agreement, which included a 72-hour video upload requirement as well as a provision precluding Touchline from using a third-party platform like ConnectLAX to sell certain IWLCA tournament videos.  (Id. at ¶ 54.)  Touchline proposed modifications to this addendum, but IWLCA seemingly had no interest in negotiations.  (Id. at ¶ 55.)

The relationship between the parties continued to deteriorate when, on April 5, 2021, IWLCA sent a cease and desist letter to ConnectLAX, Touchline's third-party video sales vendor, alleging trademark infringement stemming from its use of IWLCA trademarks posted by Touchline on the ConnectLAX platform.  (Id. at ¶ 58.)  IWLCA also reiterated its demand for a "market standard" 3-to-5-day video upload requirement.  (Id. at ¶ 62.)  Despite IWLCA's demands and its cease and desist letter to ConnectLAX, Touchline continued to assist SportsRecruits with tournament video recording transfers.  (Id. at ¶ 63.)  Touchline also made itself available to the SportsRecruits team to address any questions or issues the team might have.  (Id. at ¶ 64.)  Touchline received no additional compensation for its time and effort supporting SportsRecruits.  (Id. at ¶ 65.)

In September 2021, IWLCA terminated the 2018 Agreement, in part, because of Touchline's failure to timely deliver tournament

recordings within the 72-hour timeframe proposed in IWLCA's 2020 addendum. (Id. at ¶ 68.) According to Touchline, this termination was the culmination of IWLCA's scheme to escape its obligations under the 2018 Agreement. (Id. at ¶ 70.) Touchline contends that IWLCA forced it to make SportsRecruits a viable platform to take Touchline's business and, according to Touchline, wrongfully terminated the 2018 Agreement based on illegitimate grounds. (Id.) As a result, Touchline filed the present lawsuit, alleging one claim for breach of contract stemming from IWLCA's 2021 termination of the 2018 Agreement and one claim for unjust enrichment based on Touchline's uncompensated assistance with the SportsRecruits platform.

**II. ANALYSIS**

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1 at ¶ 4.) The court exercises personal jurisdiction over IWLCA, which has substantial contacts in this district, including by maintaining a place of business in the district and purposefully availing itself of the benefits and protections of the laws of North Carolina by being registered to conduct business in North Carolina pursuant to a Certificate of Authority for Nonprofit Corporation. (Id. at ¶¶ 3, 5.) Venue is proper pursuant to 28 U.S.C. § 1391(b). Further, the parties consented to jurisdiction and venue in this court in the 2018 Agreement. (Doc.

6

1 at ¶ 8.).  The parties also agreed the 2018 Agreement would be governed by North Carolina law.  (Doc. 1-1 at 5.)

   A.   **Standard of Review**

IWLCA moves to dismiss Touchline's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Touchline has failed to state a claim upon which relief can be granted. (Doc. 14.)  A motion to dismiss pursuant to Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering the motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d

7

544, 550 (M.D.N.C. 2016) (alterations in original) (quoting Twombly, 550 U.S. at 555).  Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  In evaluating a Rule 12(b)(6) motion, the court "generally cannot reach the merits of an affirmative defense."  Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).

**B.   Breach of Contract**

Touchline's first cause of action alleges breach of the 2018 Agreement.  To succeed on a breach of contract claim, a plaintiff must show "(1) existence of a valid contract, and (2) breach of the terms of that contract."  Sanders v. State Pers. Comm'n, 677 S.E.2d 182, 187 (N.C. Ct. App. 2009) (quoting Toomer v. Garrett, 574 S.E.2d 76, 91 (N.C. 2002)) (internal quotation marks omitted). In interpreting contracts, North Carolina courts employ the following rules of construction:

> [T]he goal of construction is to arrive at the intent of the parties when the [contract] was issued. Where a [contract] defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect.

Singleton v. Haywood Elec. Membership Corp., 588 S.E.2d 871, 875

(N.C. 2003) (quoting Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 524 S.E.2d 558, 563 (N.C. 2000)). "Whether a failure to perform a contractual obligation is so material as to discharge other parties to the contract from further performance of their obligations thereunder is a question of fact which must be determined by the jury or . . . by the trial court without a jury." Combined Ins. Co. of Am. v. McDonald, 243 S.E.2d 817, 820 (N.C. Ct. App. 1978). Further, "if one party to the contract renounces it, the other may treat renunciation as a breach and sue for . . . damages at once, provided the renunciation covers the entire performance to which the contract binds the promisor." Cook v. Lawson, 164 S.E.2d 29, 32 (N.C. Ct. App. 1968) (citing Pappas v. Crist, 25 S.E.2d 850, 852 (N.C. 1943)). This, too, is a question of fact to be determined by the jury. Id.

IWLCA argues that the complaint fails to state a breach of contract claim because Touchline's ongoing prior breach authorized IWLCA's rescission of the 2018 Agreement. (Doc. 15 at 7.) IWLCA points to Touchline's "unauthorized sale" of IWLCA's tournament videos in the summer of 2021. (Id. at 8.) Specifically, the 2018 Agreement provided that Touchline would offer a collection of recordings for $300 to each team participating in a tournament that had registered for the "video choice option" package. (Doc. 1-1 at 3.) For teams that did not select the "video choice option" package, Touchline agreed to offer a collection of individual game

9

recordings at Touchline's prevailing rate. (Id.) Importantly, however, the 2018 Agreement makes clear that if Touchline desired to "offer any other video recording or package of any game or compilation of games from any of the Tournaments at any other rate, the IWLCA must approve in writing beforehand." (Id.) IWLCA alleges that, beyond the "video choice option" package and the collection of individual game recordings, Touchline started selling a "Season Pass For All My Teams" package at a rate of $1,000 to $5,000 depending on the number of teams. (Doc. 15 at 8.) IWLCA, however, did not provide the written consent required by the 2018 Agreement. (Id.) In support of this argument, IWLCA directs the court to its September 2021 termination letter sent to Touchline, Touchline's response, and IWLCA's reply. (Docs. 15-2; 15-3; 15-4.)

Although IWLCA's briefing identifies serious hurdles Touchline will have to overcome at a later stage in these proceedings, evidence in support of IWLCA's response is outside the purview of the court at the motion to dismiss stage. In evaluating a motion to dismiss, the court may consider documents attached to the complaint "as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). A document is not integral to a complaint, even if the complaint includes a few quotes from and references to the

10

document, if the claims "do not turn on, nor are they otherwise based on, statements contained" in the document. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). If a court goes beyond documents attached or integral to the complaint, "it converts the motion into one for summary judgment. Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (internal citations omitted).

Here, the document in question is a letter from Touchline's former counsel to IWLCA's counsel after IWLCA informed Touchline it was terminating the 2018 Agreement. (Doc. 15-3.) Touchline did not attach the letter to its complaint, and the complaint makes no reference to the document, does not quote from the document, and does not rely upon it. While the document may prove integral to the case at a later stage, it is not integral to the complaint at this motion to dismiss stage. As such, it is outside the purview of the court at this time. See Allen v. Atlas Boxing and Crating, No. 5:18-CV-520-FL, 2019 WL 6481342, at *4 (E.D.N.C. Dec. 2, 2019) (collecting cases and declining to consider documents attached to the motion to dismiss as they were not integral to and explicitly relied on in the complaint); Zak v. Chelsea Therapeutics Intern., Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) (refusing to take judicial notice of SEC filings and consider them in

11

determining a motion to dismiss because the documents "were not explicitly referenced in, or an integral part of, the plaintiffs' complaint.").

Furthermore, Touchline has sufficiently pleaded a claim for breach of contract. According to the complaint and taking all the reasonable allegations therein as true, IWLCA and Touchline entered into the 2018 Agreement and extended it because of amicable relations between the parties for years. (Doc. 1 at ¶ 23.) This changed, however, when IWLCA allegedly began making unilateral modifications to the 2018 Agreement, including a 72-hour video upload requirement, demanding different rates because the market rate for video production had changed, and demanding a commission for each video sold by Touchline. (Id. at ¶¶ 34-36, 38-40.) IWLCA allegedly rebuked Touchline's offer to renegotiate the 2018 Agreement (id. at ¶ 52) and unilaterally terminated the 2018 Agreement (id. at ¶¶ 66-70). A unilateral repudiation of the contract could constitute breach of the 2018 Agreement. See Cook v. Lawson, 164 S.E.2d 29, 32 (N.C. Ct. App. 1968) (citing Pappas v. Crist, 25 S.E.2d 850, 852 (N.C. 1943)) ("if one party to the contract renounces it, the other may treat renunciation as a breach and sue for . . . damages at once, provided the renunciation covers the entire performance to which the contract binds the promisor."). As such, IWLCA's motion to dismiss as to Touchline's breach of contract claim will be denied.

12

### C. Unjust Enrichment

IWLCA moves to dismiss Touchline's unjust enrichment claim on the grounds that the substance alleged is governed by an express contract claim. (Doc. 15 at 11.) The elements of an unjust enrichment claim under North Carolina law are: "(1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." TSC Rsch. LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008). "[M]ore must be shown than that one party voluntarily benefited another or his property." JP Morgan Chase Bank, Nat'l Ass'n v. Browning, 750 S.E.2d 555, 560 (N.C. Ct. App. 2013). The doctrine of unjust enrichment applies in "circumstances where it would be unfair for the recipient to retain [benefits] without the contributor being repaid or compensated." Homeq v. Watkins, 572 S.E.2d 871, 873 (N.C. Ct. App. 2002) (quoting Collins v. Davis, 315 S.E.2d 759, 761 (N.C. Ct. App. 1984)). "In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." Id. (quoting Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 266 (N.C. Ct. App. 2000)). A successful unjust enrichment claim must show that, at the time a payment was made, both parties understood that the

13

payment was made with an expectation of some service or benefit. Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., 243 F. Supp. 2d 386, 412 (M.D.N.C. 2003) (citing Scott v. United Carolina Bank, 503 S.E.2d 149, 152 (N.C. Ct. App. 1998)). Further, no unjust enrichment occurs when the benefit is given without solicitation or inducement. See Homeq, 572 S.E.2d at 873. A claim for unjust enrichment cannot survive where an express contract governs a party's claim. Booe v. Shadrick, 369 S.E.2d 554, 570 (N.C. 1988).

Touchline bases its unjust enrichment claim on its interactions with SportsRecruits. (Doc. 1 at ¶ 80.) SportsRecruits is a recruiting platform and has its own video subsidiary, Cross Street Sports. (Id. at ¶ 43.) IWLCA allegedly asked Touchline to coordinate with SportsRecruits to provide video via SportsRecruits for the 2021 IWLCA tournaments. (Id. at ¶ 42.) Touchline "was contractually obligated to coordinate with SportsRecruits" pursuant to the 2018 Agreement; however, Touchline alleges it "did not expect or agree that this would be a permanent modification" to the 2018 Agreement without other consideration and changes. (Id. at ¶ 44.) Between April and June 2021, Touchline assisted SportsRecruits in uploading video recordings and made itself available to answer questions from the SportsRecruits team. (Id. at ¶ 64.) Touchline received no compensation for the time spent working with SportsRecruits. (Id. at ¶ 65.)

14

As Touchline notes, an unjust enrichment claim cannot survive "where an express contract governs the scope of the specific benefits unjustly conferred." (Doc. 16 at 16.) The 2018 Agreement required Touchline to "work in a timely and professional [manner] with the online hosting company contracted by the IWLCA for expeditious uploading of Tournament recordings." (Doc. 1-1 at 3.) The online hosting company selected by IWLCA was SportsRecruits. (Doc. 1 at ¶ 42.) Touchline admits in its complaint that it "was contractually obligated to coordinate with SportsRecruits." (Id. at ¶ 44.) While Touchline might be unhappy with the amount of coordination required to work with SportsRecruits, it nevertheless agreed to do so in the 2018 Agreement.

However, Touchline's claim is narrowly saved from dismissal, because Touchline alleges it provided extra-contractual benefits, such as transferring videos instead of merely uploading them and providing consulting support to SportsRecruits "at the request of IWLCA." (Id. at ¶ 63.) While the 2018 Agreement covered Touchline's work with SportsRecruits, it did so only for the benefit of "expeditious uploading of Tournament recordings." (Doc. 1-1 at 3.) A claim for unjust enrichment for any benefit beyond that required by the 2018 Agreement would not be preempted by the presence the contract. At the very least, it is a question of material fact as to whether the benefits Touchline conferred to

15

SportsRecruits were extra-contractual. As such, resolution of this claim at this time would be improper.

IWLCA presents a similar argument that the claim must be dismissed because there is no evidence that both parties understood that the benefit was given with an expectation of some service or payment in return. (Doc. 18 at 9.) However, Touchline's complaint alleges that it conducted this additional consulting and transferring work at IWLCA's request (Doc. 1 at ¶ 63) and did so with the expectation that it would be compensated for them (id. at ¶ 82). Whether Touchline can prove that IWLCA also understood that Touchline would be compensated for its service remains to be seen. But Touchline has alleged that IWLCA ordered Touchline to engage in extra-contractual work and that Touchline expected to be paid for it. Accepting Touchline's allegations as true, the claim survives.

IWLCA's final argument is that the claim should be dismissed because any benefit conferred was to SportsRecruits and not IWLCA. This is similarly unpersuasive. A claim for unjust enrichment does not require the conveyance of a direct benefit. See New Prime, Inc. v. Harris Transp. Co., No. COA12-271, 729 S.E.2d 732, 2012 WL 3192718, at *4 (N.C. Ct. App. 2012) ("Our holding in the instant case is in line with the Restatement and other states. Many jurisdictions do not require that the plaintiff confer a direct benefit on the defendant in order to recover under a theory

16

of unjust enrichment.") (unpublished); <u>Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.</u>, 72 F. App'x 916, 921 (4th Cir. 2003) (finding plaintiff had produced sufficient evidence that it conferred a benefit to the defendant, even where the benefit was conferred to a third party and not directly to the defendant, because "[u]nder North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction."); <u>see also</u>, <u>Embree Constr. Grp., Inc. v. Rafcor, Inc.</u>, 411 S.E.2d 916, 923 (N.C. 1992) (holding plaintiff's allegations were sufficient to form a claim for unjust enrichment where a contractor completed a project, but the lender, with whom the contractor did not have a contract, refused to pay). Touchline alleges it made SportsRecruits "a viable platform" through its consulting work. (Doc. 1 at ¶ 80.) Certainly, this was a benefit to SportsRecruits. However, it also benefited IWLCA, as SportsRecruits was the company IWLCA selected to host all of its videos. To the extent Touchline's consulting work improved SportsRecruits's ability to provide its service to IWLCA, IWLCA received a benefit from Touchline's alleged extra-contractual work. As such, Touchline's unjust enrichment claim survives.

**III. CONCLUSION**

For the reasons stated,

17

IT IS THEREFORE ORDERED that IWLCA's motion to dismiss is DENIED.

/s/ Thomas D. Schroeder
United States District Judge

May 31, 2022